UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERODE GOODLOW,<br><br>    Plaintiff,<br><br>    v.<br><br>WARDEN BROOMFIELD, et al.,<br><br>    Defendant. | Case No. 24-cv-06902-DMR (PR)<br><br>**ORDER OF PARTIAL DISMISSAL WITH LEAVE TO AMEND; AND SERVING COGNIZABLE CLAIM** |

## I.  INTRODUCTION

Plaintiff Sherode Goodlow, a state prisoner currently incarcerated at San Quentin Rehabilitation Center ("San Quentin"), formerly known as San Quentin State Prison, has filed a civil rights action pursuant to 42 U.S.C. § 1983, representing himself and alleging constitutional violations that took place at San Quentin. Dkt. 1. His motion for leave to proceed *in forma pauperis* will be granted in a separate Order. Dkt. 6.

Plaintiff names as Defendants the following employees at San Quentin: Correctional Officers Malikan, Forter, Gonzalez, Smith, Santos, Chohan, and McCaffrey; and Warden Broomfield. Dkt. 1 at 2-4.[1] Plaintiff seeks monetary and punitive damages. *Id.* at 16.

The court now conducts its initial review of the complaint pursuant to 28 U.S.C. § 1915A. Venue is proper in this judicial district because most of the events giving rise to Plaintiff's claims in his complaint are alleged to have occurred at San Quentin, which is located here. *See* 28 U.S.C. § 1391(b).

---

[1] Page number citations refer to those assigned by the court's electronic case management filing system and not those assigned by Plaintiff.

## II. DISCUSSION

### A. Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *Id.* at § 1915A(b)(1), (2). Pleadings submitted by *pro se* plaintiffs must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Further, liability may be imposed on an individual defendant if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988); *Harris v. City of Roseburg*, 664 F.2d 1121, 1125 (9th Cir. 1981). A person deprives another of a constitutional right within the meaning of section 1983 if they engage in an affirmative act, participates in another's affirmative act or fails to perform an act which they are legally required to undertake, that causes the deprivation of which the plaintiff complains. *Leer*, 844 F.2d at 633; *see, e.g.*, *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (finding that a prison official's failure to intervene to prevent Eighth Amendment violation may be basis for liability). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *Leer*, 844 F.2d at 633.

A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted). A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or

directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "'Supervisory liability is imposed against a supervisory official in [their] individual capacity for [their] own culpable action or inaction in the training, supervision, or control of [their] subordinates, for [their] acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (citations omitted). Under no circumstances is there respondent superior liability under section 1983. *Taylor*, 880 F.2d at 1045.

Finally, Federal Rules of Civil Procedure Rule 8 requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Additionally, Rule 8(e) requires that each averment of a pleading be "simple, concise, and direct." *See McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) (affirming dismissal of complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant"). While the federal rules require brevity in pleading, a complaint nevertheless must be sufficient to give the defendants "fair notice" of the claim and the "grounds upon which it rests." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quotation and citation omitted). A complaint that fails to state the specific acts of the defendant that violated the plaintiff's rights fails to meet the notice requirements of Rule 8(a). *See Hutchinson v. United States*, 677 F.2d 1322, 1328 n.5 (9th Cir. 1982).

**B.  Background**

In his complaint, Plaintiff alleges the following constitutional violations involving Defendants retaliating against him for filing 602 inmate grievances ("grievances" or "602's") at San Quentin. *See* Dkt. 1 at 10-14.

Plaintiff alleges that on an unknown date, possibly sometime before July, 2022, "because [he] chose[] to exercise his constitutional rights to "file prison grievances against prison staff," unnamed San Quentin officers "were trying to place his life in grave danger by repeatedly assigning [young] gang members inside of his cell." *Id*. at 12. Plaintiff claims he spoke with an unnamed sergeant in San Quentin's Badger Unit about the situation, and the inmate was moved. *Id*. Plaintiff further alleges that, "because of this matter, [he] was retaliated against by Defendant

Smith, who works in [San Quentin's] Badger Unit," where he was being housed. *Id.*

Plaintiff lists several instances of alleged retaliation in 2022, and chronologically, it seems that the first one took place on July 3, 2022. *Id*. at 13. Plaintiff alleges that on that date Defendant Smith stopped him at "chow release" and told him he had legal mail. *Id*. at 13. Plaintiff claims that legal mail is "normally passed out at approximately 7:45 - 8:30 pm, and not during chow time." *Id*. Plaintiff alleges Defendant Smith "proceeded to berate Plaintiff for all of the grievances he has filed" and "reminded him that he was in prison." *Id*. Defendant Smith told Plaintiff "this is not a country club" and to "suck it up!" and "stop w[h]ining!" *Id*.

On July 4, 2022, during Plaintiff's "canteen hours," Defendants McCaffrey and Smith "accosted" the person working at the canteen who collects inmates' ID's and retrieved Plaintiff's ID. *Id*. at 13. Defendants McCaffrey and Smith then allegedly approached Plaintiff and said, "You are not allowed to shop because you are L.O.P. (meaning Lost of Privilege)." *Id*. Plaintiff informed Defendants McCaffrey and Smith that he was "C-Status," which meant he was "allowed to shop within the prison canteen," but instead they "denied [him] the right to shop at the canteen as every other similar situated inmate." *Id*.

Plaintiff further alleges that at 12:30 pm the same date, he attempted to use the law library but Defendant Smith stopped him and told him he could not do so. *Id*. at 13. Plaintiff told Defendant Smith he was allowed to use the library and asked Defendant Smith to show him a rule or memo that said otherwise. *Id*. Defendant Smith told Plaintiff to check in with Correctional Officer Hertudo, a non-party, and after Plaintiff did so Officer Hertudo allowed Plaintiff inside the library. *Id.* After an hour, at approximately 1:30 pm, another non-party named Correction Officer Auramson entered the law library and told Plaintiff to return back to Badger Unit, where he was met by Defendant Smith. *Id*. at 14. Defendant Smith informed Plaintiff that he was "no longer allowed to attend the law library without [Defendant Smith's] permission." *Id*. When Plaintiff asked to "see the memo that makes such [a] claim," Plaintiff alleges Defendant Smith became "irate" and "ordered Plaintiff to repeat what [Defendant Smith] had just said." *Id*. Plaintiff alleges his "Post Traumatic Stress Disorder was triggered," and "after he repeated what Defendant Smith had said, Plaintiff requested that he be allowed to speak with a Mental Health Staff." *Id*.

4

Thereafter, Plaintiff filed a grievance stemming from this incident, and Reviewing Authority L. Bravo, a non-party, "acknowledged that between 12:30 and 3:00 hours, weekdays only, inmates, including Plaintiff, are allowed to utilize the law library." *Id*. at 14.

Plaintiff states while he was at Badger Unit's dayroom on July 6, 2022, Defendants Malikan, Forter, and Gonzalez were locking all cell doors in that unit when Plaintiff asked them if he could first use the restroom "since the unit[']s dayroom is not equip[ped] with a bathroom." *Id*. at 10. Plaintiff informed Defendant Gonzalez he "suffer[red] from sever[e] bladder issues" and could not wait, but Defendant Gonzalez denied Plaintiff the right to use the restroom. *Id*. Plaintiff alleges Defendant Gonzalez told the Plaintiff he had to "wait until unlock," which was in fifteen minutes. *Id*. Plaintiff informed Defendants Malikan, Forter, and Gonzalez he would file a grievance, to which Defendant Malikan allegedly responded, "Go ahead. Make sure you spell my name right." *Id*. Plaintiff alleges that two weeks prior he had spoken to Defendant Broomfield (San Quentin's warden) about the lack of toilet in the dayrooms. *Id*. at 11. Defendant Broomfield told Plaintiff he would "look into it," but Plaintiff alleges that it was to no avail and "the unconstitutional act continued to take place." *Id*.

On July 8, 2022, Defendant Malikan used the P.A. system to make the following announcement: "I will be locking the bars, so if you have to take a 'shit!' do it now. I will not be unlocking the bars, YOU KNOW WHO YOU ARE!" *Id*. at 11. Plaintiff alleges that at around 8:45 pm on the same day, inmate Beaver's and Plaintiff's "power was mysteriously turned off." *Id*. Plaintiff alleges that he and inmate Beaver had both recently filed prison grievances against staff in Badger Unit, and they were the only inmates out of 467 inmates who were affected by the power outage. *Id*. Plaintiff states the power outage happened on a Friday so, they "had to wait until Monday to have [their power] turned back on." *Id*. at 11.

On July 18, 2022, "because of Plaintiff's grievances," unnamed San Quinten staff installed a toilet in the "Pill Call Yard" of Badger Unit. *Id* at 12. However, Plaintiff alleges "inmates [still] ha[d] to wait until the hourly unlock to use such restroom." *Id*. Plaintiff claims San Quentin acknowledged the problem but "failed to properly correct it." *Id*.

On July 28, 2022, unnamed San Quentin staff conducted a "random search" at Badger

Unit. *Id.* at 11. Unnamed prison staff ordered Plaintiff to enter Badger Unit's dining hall. *Id.* While waiting, Plaintiff had to use the restroom, but the dining hall did not have a restroom. *Id.* Plaintiff alleges he "summoned the assistance from [Correctional Officers] Vong, and Pelte," who are non-parties, as well as Defendants Santos and Chohan "to use the restroom." *Id.* Plaintiff also "alerted Defendants about his serious medical condition," but they said no and "told [him] to go sit back down." *Id.* Plaintiff alleges Defendant Santos laughed and said, "Hey! [D]on't get him upset. He likes to file a lot of 602's." *Id.* The other correctional officers laughed, and one unnamed officer responded, "Ya! We all know about him." *Id.* at 11-12. Plaintiff alleges he requested to speak with a supervisor but was denied, which "led [to Plaintiff] having to result to obtaining a bottle that was located within the din[]ing hall and urinate inside of it in front of inmates." *Id.* at 12. Once the inmates were released from the dining hall, Plaintiff informed Defendant Gonzalez about the incident but Defendant Gonzalez "recklessly (dis)regarded [Plaintiff's] claims and allowed this kind of behavior to occur." *Id.* Plaintiff informed Defendant Gonzalez that he would be filing a grievance on this matter. *Id.* Apparently, Plaintiff did file such a grievance, and on September 30, 2022, an investigation into Plaintiff's claims were made but Defendant Broomfield concluded that no misconduct had occurred on July 28, 2022. *Id.*

On January 17, 2023, Plaintiff states he filed a "Reasonable Accommodation Request" to be moved out of Badger Unit "because of the retaliatory action [he] received from correctional officers at [San Quentin]." *Id*. at 14. Specifically, Plaintiff made such an accommodation request "because of the constant threats and retaliation he was receiving from such officers." *Id.* Plaintiff was moved to North Block on January 20, 2023. *Id.*

### C. Legal Claims

Plaintiff alleges the present action arises under the 42 U.S.C. § 1983, and his claims include violations of the First and Eighth Amendments. Dkt. 1 at 3.

#### 1. First Amendment

To state a claim for First Amendment retaliation against a government official, a plaintiff must demonstrate that (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from

continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *Mulligan v. Nichols*, 835 F.3d 983, 988 (9th Cir. 2016).

The prisoner must prove all elements of a viable retaliation claim, including the absence of legitimate correctional goals for the conduct about which he complains. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" *Id*. at 807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)). In particular, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id*. (quoting *Sandin*, 515 U.S. at 482). The prisoner also must show that the constitutionally protected activity in which he was engaged was a substantial or motivating factor for the alleged retaliatory action. *See Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence). The prisoner need not prove a total chilling of his First Amendment rights to state a claim for retaliation; that his First Amendment rights were chilled, though not necessarily silenced, is enough." *Rhodes v. Robinson*, 408 F.3d 559, 569 (9th Cir. 2005). But the prisoner at least must allege that he suffered harm, since harm that is more than minimal will almost always have a chilling effect. *Id*. at 567-68 n.11.

Plaintiff alleges that Defendant Smith's actions amounted to retaliation against him for filing grievances, including pulling Plaintiff from the chow line and berating him for all the grievances he had filed, *see* Dkt. 1 at 13, telling Plaintiff to "suck it up!" and "stop w[h]ining!" *see id.*, not allowing Plaintiff to shop at the canteen; *id.*, and trying to keep Plaintiff from accessing the law library. *Id*. As a result, Plaintiff alleges that some of Defendant Smith's actions "triggered his Post Traumatic Stress Disorder." *Id*. Plaintiff also claims that he filed a "Reasonable Accommodation Request" to be moved out of Badger Unit due to these acts of retaliation. *Id*. at 14. Accommodations were made, and Plaintiff was moved to another unit on January 20, 2023. *Id*. Liberally construed, Plaintiff states a cognizable First Amendment retaliation claim against Defendant Smith.

Plaintiff has not stated a cognizable constitutional claim against the remaining Defendants, including Defendants Broomfield, Malikan, Forter, Gonzalez, Santos, Chohan, and McCaffrey. Plaintiff's allegations of retaliation against the aforementioned Defendants lack a demonstration of a substantial causal relationship between the constitutionally protected activity and the adverse action. Because it appears possible that Plaintiff may be able to correct this deficiency, the court DISMISSES his First Amendment claim against Defendants Broomfield, Malikan, Forter, Gonzalez, Santos, Chohan, and McCaffrey with leave to amend. If Plaintiff chooses to amend his complaint and re-plead this claim against Defendants Broomfield, Malikan, Forter, Gonzalez, Santos, Chohan, and McCaffrey, he must proffer enough facts to state a plausible claim that Defendants Broomfield, Malikan, Forter, Gonzalez, Santos, Chohan, and McCaffrey acted in retaliation as a result of Plaintiff filing grievances.

To the extent that Plaintiff's complaint states a claim against Defendants of verbal harassment and threats, such a claim is DISMISSED. *See Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997) (Allegations of verbal harassment and abuse fail to state a claim cognizable under 42 U.S.C. § 1983.); *see also Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (mere threat does not constitute constitutional wrong, nor do allegations that naked threat was for purpose of denying access to courts compel contrary result).

### 2. Eighth Amendment

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993).

In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation. The more basic the need, the shorter the time it can be withheld. *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Substantial deprivations of shelter, food, drinking water or sanitation for four days, for example, are sufficiently serious to satisfy the objective component of an Eighth Amendment claim. *See id*. at 732-73. The requisite

state of mind to establish an Eighth Amendment violation depends on the nature of the claim. A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, *id.* (citing *Wilson*, 501 U.S. at 297).

In prison-conditions cases, the necessary state of mind is one of "deliberate indifference." *See, e.g., Farmer*, 511 U.S. at 834 (inmate safety); *Helling*, 509 U.S. at 32-33 (inmate health); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (inmate health).

Neither negligence nor gross negligence will constitute deliberate indifference. *See Farmer*, 511 U.S. at 835-36 & n.4; *see also Estelle*, 429 U.S. at 106 (establishing that deliberate indifference requires more than negligence). A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety. *See Farmer*, 511 U.S. at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *See id.* An Eighth Amendment claimant need not show, however, that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *See id.* at 842. This is a question of fact. *See Farmer*, 511 U.S. at 842. A heightened pleading standard applies to the subjective prong of Eighth Amendment claims: the Plaintiff must make nonconclusory allegations supporting an inference of unlawful intent. *Alfrey v. United States*, 276 F.3d 557, 567-68 (9th Cir. 2002) (applying standard to *Bivens* Eighth Amendment claim).

Although the Eighth Amendment protects against cruel and unusual punishment, this does not mean that federal courts can or should interfere whenever prisoners are inconvenienced or suffer *de minimis* injuries. *See, e.g., Holloway v. Gunnell*, 685 F.2d 150 (5th Cir. 1985) (no claim stated where prisoner forced to spend two days in hot dirty cell with no water); *Evans v. Fogg*, 466 F. Supp. 949 (S.D.N.Y. 1979) (no claim stated by prisoner confined for twenty-four hours in

refuse strewn cell and for two days in flooded cell).  Federal courts instead should avoid enmeshing themselves in the minutiae of prison operations in the name of the Eighth Amendment. *See Wright v. Rushen*, 642 F.2d 1129, 1132 (9th Cir. 1981).

Plaintiff alleges that Defendants Malikan, Forter, Gonzalez Santos, Chohan, Vong, and Pelte did not let Plaintiff use the restroom on July 6, 2022 and July 28, 2022.  Dkt. 1 at 10-12. Plaintiff alleges Defendant Broomfield knew about the issue but did not address it.  *Id*. at 11-12, 21.  Plaintiff alleges he has "sever[e] bladder issues" that are documented.  *Id*. at 10.  Plaintiff also alleges he informed Defendants of his medical issue, but his claims were disregarded.  *Id*. at 10, 12.  Finally, Plaintiff names Defendant Smith but does not link this defendant to his alleged Eighth Amendment violation.

Plaintiff's allegations do not demonstrate Defendant Smith's personal involvement in the constitutional deprivation, and his allegations against Defendants Broomfield, Malikan, Forter, Gonzalez, Santos, Chohan, Vong, and Pelte do not state a claim under this standard.  Plaintiff's claims fail to state a substantial, objective serious offense.  Plaintiff only states Defendants Malikan, Forter, and Gonzalez told him to wait fifteen minutes on July 6, 2022, *see id.* at 10, and Defendants Santos, Chohan, Vong, and Pelte did not allow Plaintiff to use the restroom while a random search was being conducted on July 28, 2022, *see id.* at 12.  Because such allegations do not seem to rise to a level of an Eighth Amendment violation, this claim is DISMISSED with leave to amend.  Plaintiff must show that these Defendants' actions amounted to deliberate indifference in violation of the Eighth Amendment.  In an amended complaint, Plaintiff must provide more detail establishing that the named Defendants had a culpable state of mind, and that he suffered as a result of Defendants' actions, i.e., how the denial of the restroom for a short span of time was sufficiently serious.  Accordingly, his claims against Defendants Broomfield, Malikan, Forter, Gonzalez, Santos, Smith, Chohan, Vong, and Pelte are DISMISSED with leave to amend.

## III. CONCLUSION

For the foregoing reasons, the court orders as follows:

1. Plaintiff states a cognizable First Amendment retaliation claim against Defendant

10

1 Smith.

2     2.    The court DISMISSES with leave to amend Plaintiff's First Amendment retaliation claim against Defendants Broomfield, Malikan, Forter, Gonzalez, Santos, Chohan, Vong, and Pelte.

    3.    The court DISMISSES with leave to amend Plaintiff's Eighth Amendment claim against Defendants Broomfield, Malikan, Forter, Gonzalez, Santos, Smith, Chohan, Vong, and Pelte.

    4.    If Plaintiff chooses to file an amended complaint, he must file the amended complaint within **twenty-eight (28) days** of the date of this Order. The amended complaint must include the caption and civil case number used in this Order—Case No. 24-cv-06902-DMR (PR)—and the words "AMENDED COMPLAINT" on the first page. He must use the court's complaint form and answer all the questions on the form in order for the action to proceed. Because an amended complaint completely replaces the previous complaints, Plaintiff must include in his amended complaint *all* the claims he wishes to present, including any amended claims (i.e., the aforementioned First and Eighth Amendment claims) as well as the First Amendment claim against Defendant Smith, which the court has already found cognizable. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). Plaintiff may not incorporate material from the prior complaint by reference. Failure to file an amended complaint in accordance with this Order in the time provided will result in the following: (1) the dismissal of his First Amendment claim against Defendants Broomfield, Malikan, Forter, Gonzalez, Santos, Chohan, Vong, and Pelte, and his Eighth Amendment claim Defendants Broomfield, Malikan, Forter, Gonzalez, Santos, Smith, Chohan, Vong, and Pelte; (2) the initial complaint (Dkt. 1) remaining the operative complaint; and (3) this action proceeding in accordance with this Order.

    5.    The Clerk of the Court shall serve **Correctional Officer Defendant Smith** at San Quentin. Service on the listed defendant shall proceed under the California Department of Corrections and Rehabilitation's ("CDCR") e-service pilot program for civil rights cases from prisoners in CDCR custody. In accordance with the program, the Clerk is directed to serve on CDCR via email the following documents: the operative complaint, this order of service, a CDCR

11

Report of E-Service Waiver form and a summons. The Clerk shall serve by mail a copy of this order on Plaintiff.

No later than **forty (40) days** after service of this order via email on CDCR, CDCR shall provide the court a completed CDCR Report of E-Service Waiver advising the court if the defendant listed in this order will be waiving service of process without the need for service by the United States Marshal Service ("USMS") or if defendant will decline to waive service or could not be reached. CDCR also shall provide a copy of the CDCR Report of E-Service Waiver and of the notice of assignment of prisoner case to a magistrate judge and accompanying magistrate judge jurisdiction consent or declination to consent form to the California Attorney General's Office, which, within **twenty-one (21) days**, shall file with the court a waiver of service of process for any defendant(s) who are waiving service and, within **twenty-eight (28) days** thereafter, shall file a magistrate judge jurisdiction consent or declination to consent form as to any defendant(s) who waived service.

Upon receipt of the CDCR Report of E-Service Waiver, the Clerk shall prepare for each defendant who has not waived service according to the CDCR Report of E-Service Waiver a USM-285 form. The Clerk shall provide to the USMS the completed USM-285 form and copies of this order, summons, operative complaint and notice of assignment of prisoner case to a magistrate judge and accompanying magistrate judge jurisdiction consent or declination to consent form for service upon each defendant who has not waived service. The Clerk also shall provide to the USMS a copy of the CDCR Report of E-Service Waiver.

6.      The defendant shall answer the complaint in accordance with the Federal Rules of Civil Procedure. The following briefing schedule shall govern dispositive motions in this action:

a.      No later than **sixty (60) days** from the date their answer is due, the defendant shall file a motion for summary judgment or other dispositive motion. The motion must be supported by adequate factual documentation, must conform in all respects to Federal Rule of Civil Procedure 56, and must include as exhibits all records and incident reports stemming from

the events at issue. A motion for summary judgment also must be accompanied by a *Rand*[2] notice so that the plaintiff will have fair, timely and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 935 (9th Cir. 2012) (notice requirement set out in *Rand* must be served concurrently with motion for summary judgment). A motion to dismiss for failure to exhaust available administrative remedies must be accompanied by a similar notice. However, the court notes that under this Circuit's case law, in the rare event that a failure to exhaust is clear on the face of the complaint, the defendant may move for dismissal under Rule 12(b)(6) as opposed to the previous practice of moving under an unenumerated Rule 12(b) motion. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (overruling *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), should be raised by a defendant as an unenumerated Rule 12(b) motion). Otherwise, if a failure to exhaust is not clear on the face of the complaint, the defendant must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56. *Id.* If undisputed evidence viewed in the light most favorable to the plaintiff shows a failure to exhaust, the defendant is entitled to summary judgment under Rule 56. *Id.* But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.* at 1168.

If the defendant is of the opinion that this case cannot be resolved by summary judgment, the defendant shall so inform the court at least **seven (7) days** prior to the date the summary judgment motion is due. All papers filed with the court shall be promptly served on the plaintiff.

      b.      The plaintiff's opposition to the dispositive motion shall be filed with the court and served on the defendant no later than **twenty-eight (28) days** after the date on which the defendant's motion is filed.

      c.      The plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you

---

[2] *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact—that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.  When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(c), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment may be entered against you.  If summary judgment is granted, your case will be dismissed and there will be no trial.  *Rand*, 154 F.3d at 962-63.

The plaintiff also is advised that—in the rare event that the defendant argues that the failure to exhaust is clear on the face of the complaint—a motion to dismiss for failure to exhaust available administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit without prejudice.  To avoid dismissal, you have the right to present any evidence to show that you did exhaust your available administrative remedies before coming to federal court.  Such evidence may include: (1) declarations, which are statements signed under penalty of perjury by you or others who have personal knowledge of relevant matters; (2) authenticated documents— documents accompanied by a declaration showing where they came from and why they are authentic, or other sworn papers such as answers to interrogatories or depositions; (3) statements in your complaint insofar as they were made under penalty of perjury and they show that you have personal knowledge of the matters state therein.  As mentioned above, in considering a motion to dismiss for failure to exhaust under Rule 12(b)(6) or failure to exhaust in a summary judgment motion under Rule 56, the district judge may hold a preliminary proceeding and decide disputed issues of fact with regard to this portion of the case.  *Albino*, 747 F.3d at 1168.

(The notices above do not excuse the defendant's obligation to serve similar notices again concurrently with motions to dismiss for failure to exhaust available administrative remedies and

motions for summary judgment. *Woods*, 684 F.3d at 935.)

        d.      The defendant shall file a reply brief no later than **fourteen (14) days** after the date the plaintiff's opposition is filed.

        e.      The summary judgment motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the court so orders at a later date.

7.      Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. Leave of the court pursuant to Rule 30(a)(2) is hereby granted to the defendant to depose the plaintiff and any other necessary witnesses confined in prison.

8.      All communications by the plaintiff with the court must be served on the defendant's counsel by mailing a true copy of the document to them.

9.      It is the plaintiff's responsibility to prosecute this case. The plaintiff must keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Pursuant to Northern District Local Rule 3-11, a *pro se* party whose address changes while an action is pending must promptly file a notice of change of address specifying the new address. *See* L.R. 3-11(a). The court may dismiss without prejudice a complaint when: (1) mail directed to the *pro se* party by the court has been returned to the court as not deliverable, and (2) the court fails to receive within sixty days of this return a written communication from the *pro se* party indicating a current address. *See* L.R. 3-11(b).

10.     Upon a showing of good cause, requests for a reasonable extension of time will be granted provided they are filed on or before the deadline they seek to extend.

11.     The Clerk shall include a copy of a blank complaint form with a copy of this Order to the plaintiff.

IT IS SO ORDERED.

Dated: July 23, 2025

DONNA M. RYU  
Chief Magistrate Judge